UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO D. WEBSTER,

        Petitioner,               Case No. 2:18-cv-12446
                                                Hon. Denise Page Hood

v.

ERICA HUSS,

        Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, (3) AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Antonio D. Webster was convicted after a jury trial in the Wayne Circuit Court of of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84; two counts of felonious assault, MICH. COMP. LAWS § 750.82; felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, second offense, MICH. COMP. LAWS § 750.227b. Petitioner was sentenced as a third-time habitual felony offender to a controlling composite sentence of thirteen to twenty-five years imprisonment.

The petition raises two claims: (1) the trial court erred in admitting six recorded jailhouse telephone conversions as showing consciousness of guilt,

and (2) the trial court erred in instructing the jury on the permissible use of the recordings.

The Court will deny the petition because Petitioner's claims are without merit. The Court will also deny a certificate of appealability, but it will grant permission to appeal in forma pauperis.

## I. Background

The Michigan Court of Appeals summarized the facts surrounding Petitioner's jury trial:

> Defendant's convictions arose from the April 21, 2015, shooting assaults of Brian Fitzhugh and Jamal Roquemore. Evidence at trial indicated that defendant's girlfriend, Dionne Williams-Mitchell, was also involved in a relationship with Roquemore. Neither man knew about Dionne's relationship with the other. Dionne and her sister, Marcelnia Mitchell, arranged to go out with Roquemore and his friend, Fitzhugh, for Roquemore's birthday. Dionne, along with Marcelnia, picked the men up and drove to an abandoned house, allegedly to buy marijuana. Defendant, Dahviell Richardson, and Keith Williams were at the house. Defendant was upset that Dionne was with another man. Defendant and Richardson had firearms and shot Roquemore and Fitzhugh. Two weapons were recovered from defendant and Dionne's home, and defendant's DNA was found on one of the firearms. The other firearm, an assault rifle, was determined to have fired cartridge casings left at the scene.

*People v. Webster*, 2017 WL 6389959, at *1 (Mich. Ct. App. Dec. 14, 2017).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief on appeal

that raised what now form his two habeas claims. The Michigan Court of Appeals rejected the claims and affirmed Petitioner's conviction in an unpublished opinion. *Id.* at *4–5.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Webster*, 911 N.W.2d 706 (Mich. 2018) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different

from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103 (internal quotation omitted).

**III. Analysis**

I. Admission of Telephone Recordings

Petitioner's first claim asserts that the trial court erred in allowing the prosecutor to admit recordings of telephone conversations made from the Wayne County Jail. Petitioner was a participant in two of the calls, while four other calls were made from other inmates to Petitioner's girlfriend, Dionne Williams-Mitchell.

In Petitioner's first call, made on May 6, 2015, he stated that his brother should contact a witness in an effort to change their statement to one indicating that Petitioner was not present at the shooting. In Petitioner's second call, made on May 20, 2015, Petitioner complained that someone lied in court, and he wanted his "regards" sent to his co-defendant.

In the first call made from inmate Dale Morgan to Williams-Mitchell, Morgan said he was calling for a friend who wanted her to send him money. Williams-Mitchell testified that she understood that the message was coming from Petitioner. Dkt. 8-8, at 72-73. Morgan also told Williams-Mitchell that his friend wanted her to be "scarce" and "unavailable," which to her meant to stay away from the police. In another call Williams-Mitchell told Morgan that she was making herself difficult to find. In the final call, Morgan told

5

William-Mitchell that she and her sister needed to get out of town, and she replied that she would. In the call from inmate Donovan Spidell to Williams-Mitchell, he told her that "dog" wanted her to get out of town.

To the extent Petitioner continues to claim that admission of the calls violated state evidentiary rules or denied him due process, the claims lack merit. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.

State court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); accord *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v.*

*Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Under Michigan law, "[e]vidence that defendant made efforts to influence an adverse witness is relevant if it shows consciousness of guilt." *People v. Schaw*, 288 Mich. App. 231, 237 (2010), citing *People v. Mock*, 108 Mich. App. 384, 389 (1981). Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. Evidence is considered unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury. *People v. Crawford*, 458 Mich. 376 (1998).

In this case, with the two exceptions discussed below, Petitioner's attempts to influence witnesses was not marginally probative but pertained directly to the issue of Petitioner's consciousness of guilt. The prosecutor sought to draw the permissible inference though this evidence that Petitioner acting on his own and through fellow inmates sought to influence witnesses in the case because he was conscious of his own guilt. The Court will not second-guess the state court's determination that the recordings of the phone calls were properly admitted under state law.

Furthermore, Petitioner's due process claim fails because it cannot be supported by clearly established Supreme Court law. Under the AEDPA, the Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not cited any Supreme Court law concerning the admission of the type of evidence at issue here. No such case holds that a prosecutor may not offer evidence that Petitioner acting on his own or through other inmates attempted to influence the testimony of witnesses.

Petitioner's Confrontation Clause argument also fails. Relevant here, the Clause prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify, and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Not every out-of-court statement introduced at trial will implicate the protections of the Confrontation Clause, however. In *Davis v. Washington*, 547 U.S, 813 (2006), the Supreme Court held that the Confrontation Clause applied only to "testimonial" hearsay. *Id*. at 823-24. See

8

also *Giles v. California*, 554 U.S. 353, 376 (2008) (reiterating that "only testimonial statements are excluded by the Confrontation Clause. Statements to friends and neighbors . . . and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules.") (emphasis in original).

The statements at issue here were decidedly not testimonial. They were made by Petitioner and by other inmates acting at his direction to his girlfriend. See *United States v. Franklin*, 415 F.3d 537, 545-46 (6th Cir. 2005) (hearsay admissions of a codefendant to a friend and confidant are not testimonial) (citing, inter alia, *United States v. Manfre,* 368 F.3d 832, 838 n.1 (8th Cir. 2004) (statements "made to loved ones or acquaintances . . . are not the kind of memorialized, judicial-process-created evidence of which *Crawford* speaks.")). Petitioner's confrontation rights were therefore not implicated by admission of this non-testimonial hearsay.

Finally, the Court notes that the Michigan Court of Appeals found that two of the phone calls were improperly admitted as a matter of state evidentiary law. The state court found that Petitioner's May 20 call to Williams-Mitchell sending "regards" to his co-defendant was not an expression of consciousness of guilt. It further found that the May 24 call from Spidell that

"dog" wanted a witness to leave town was improperly admitted because there was no indication that "dog" referred to Petitioner. *Webster*, 2017 WL 6389959, at *2, 4. The finding of evidentiary error is distinct from a finding of constitutional error. Nevertheless, even assuming that the error was of constitutional dimension, Petitioner would still not be entitled to habeas relief.

To demonstrate entitlement to relief, Petitioner must show that a constitutional error had a substantial and injurious effect or influence in determining the jury's verdict. See *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); see also *Lilly v. Virginia*, 527 U.S. 116, 140 (1999); *Brown v. Curtin*, 661 F. App'x 398, 406-07 (6th Cir. 2016).

The evidence against Petitioner was quite strong. Williams-Mitchell, who was the mother of Petitioner's children as well as her sister both identified Petitioner as the shooter. Dkt. 8-8, at 27-29, 34-43; Dkt. 8-9, at 49-60, 133, 135, 140. Shells that were recovered from the scene were found to have been fired from the shotgun recovered at Petitioner's house, and Petitioner's DNA was found on the shotgun. Dkt. 8-10, at 162; Dkt. 8-11, at 22-23. It was determined from ballistics evidence that an assault rifle found in Petitioner's home had also been used during the incident. The admission of two telephone recordings that arguably did not show Petitioner's consciousness of guilt did

10

not have a substantial impact on the outcome of the trial in view of the weighty evidence presented of Petitioner's guilt.

II. Jury Instructions

Petitioner's next claim asserts that the trial court improperly instructed the jury on the permitted used of the telephone recordings. The Court instructed the jury that:

> The prosecution has introduced evidence that defendant Antonio Webster attempted to persuade, directly or through some other person at the instigation of defendant Webster, Dionne Williams-Mitchell and Marcelnia Mitchell to testify falsely and/or not appear at court.
>
> Such an attempt, if made, may be considered by you as circumstantial evidence of guilt. Before you consider any attempt to procure false testimony and/or the absence of a witness as - - as evidence against defendant Webster, you must determine whether the attempt to persuade a witness to testify falsely and/or not appear at court was made by defendant Webster or at his direction.
>
> When you deliberate, if you determine that an attempt to persuade a witness to testify falsely and/or not appear at court was made by defendant Webster or at his direction, then you may consider that attempt to persuade the witness to testify falsely and/or not appear at court as consciousness of guilt on the part of defendant Webster.
>
> And it may be used by you as you consider all of the evidence submitted in the case to determine whether or not defendant Webster is guilty of the charged offenses.

11

> Be careful, however, when you consider this evidence, because a person may also act in certain ways for innocent reasons. You must consider all of the evidence presented in this case and -- and decide whether the evidence you believe proves beyond a reasonable doubt that defendant Webster is guilty.

Dkt. 8-12, at 137-138.

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. A habeas petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). The Supreme Court repeatedly has rebuffed broad due process challenges to erroneous jury instructions. *Waddington v. Sarausad*, 555 U.S. 179, 192-94 (2009) (rejecting claim of ambiguous instruction on accomplice liability); *Henderson*, 431 U.S. at 152 (upholding verdict despite failure to give causation instruction); *Estelle*, 502 U.S. at 74-75 (finding no due process violation in the use of evidence of other bad acts for showing intent, identity, motive or plan); see also *Levingston v. Warden*, 891 F.3d 251, 254-55 (6th Cir. 2018) (rejecting habeas relief on the grounds that the instructions permitted the use of hearsay evidence as substantive evidence).

The Court discerns no error in the challenged instruction. Petitioner asserts that the instruction asked the jury to decide his guilt or *innocence* based on the telephone recordings. While the problematic reference to innocence was contained in the instruction proposed by the prosecutor, it was omitted in the instruction actually read by trial court to the jury. Petitioner further argues that the instruction improperly focused the jury's attention on what he said as opposed to what he did. But as indicated above, the statements referred to in the instruction were relevant to a determination of Petitioner's guilt because they tended to show Petitioner's consciousness of guilt. Petitioner's trial was not rendered fundamentally unfair by the challenged jury instructions.

### IV. Certificate of Appealability

A certificate of appealability will be denied because Petitioner has failed to demonstrate a substantial showing of the denial of a constitutional right with respect to any of his claims. 28 U.S.C. § 2253(c)(2) and (3); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

The Court will grant permission to appeal in forma pauperis because an appeal of this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

### V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

                                                  s/Denise Page Hood
                                                  United States District Judge

Dated: July 31, 2020